0086

B. H. HUTSON, Respondent, v. CUMMINS CAROLINAS, INC., Appellant.

(314 S. E. (2d) 19)

Court of Appeals

*Jeter E. Rhodes, Jr.,* and *John R. Holland,* of *Whaley, McCutchen, Blanton & Rhodes,* Columbia, *for appellant.*

*Thomas H. Hart, III* and *Terry E. Richardson, Jr.,* of *Blatt & Fales,* of Barnwell, *for respondent.*

Heard Oct. 27, 1983.

Decided Feb. 21, 1984.

CURETON, Judge:

B. H. Hutson brought suit against Cummins Carolinas, Inc., an authorized truck dealership, alleging that repairs made by Cummins on his 1974 Kenworth truck resulted in damage to the truck, depreciation to the truck, loss of use of the truck and loss of profits. The case was submitted to the jury on the theories of negligent failure to repair and breach of implied warranty of repair. Cummins is appealing a jury verdict of $65,000 in favor of Hutson which was remitted by the trial judge to $47,500.

Cummins contends on appeal that the reduced verdict should be set aside by this court because Hutson never proved a defect in the repairs or that such repairs caused the damages alleged. Cummins also asserts that even if Hutson is entitled to some damages, the jury verdict of $65,000 was so excessive as to be deemed a disregard of the facts and due to passion and prejudice rather than reason. Moreover, Cummins argues that the remitted verdict of $47,500 is still excessive and unsupported by the evidence. We affirm the jury's verdict on the issue of defectiveness of the repairs but reverse on the issue of damages.

In an action at law, tried by a jury, the jurisdiction of this court extends merely to the correction of errors of law. A factual finding of the jury will not be disturbed unless the record fails to disclose *any* evidence which reasonably supports the jury's verdict. *Tisdale v. Kerr McGee Chemical Corporation,* 266 S. C. 64, 221 S. E. (2d) 531 (1976). It is therefore our task to review the record of the trial court and

determine whether there is any evidence to support the jury's verdict. Viewing the record in this manner, we find the evidence made a jury issue on defectiveness, causation and damages.

The truck was purchased by Hutson in June or July, 1974 for a purchase price of $30,709.00. On August 22, 1977 the truck was delivered to Cummins's shop for the purpose of repairing a leak in the water pump. At this time the truck had 375,000 miles on it.

Cummins checked for water loss and oil leaks in the front of the truck, replaced the water pump and the mounting gasket, removed the heads, checked injector sleeves, cleaned the block, replaced the "O"-ring on piston cooling nozzle, reassembled the engine, adjusted valves and injectors, then ran and checked the engine for leaks.

Hutson's driver picked up the truck and drove it to Virginia, Texas, and California. In California the driver discovered the truck was running hot and carried it to a garage where "he was given the impression" that the "O"-ring on the heat exchanger had gone out, letting oil into the water. He was also "given the impression" that by regularly flushing the radiator, no harm would come to the truck's engine. Thirty miles later the truck ran hot again and upon inspection, the driver found that the radiator had fallen back against the fan, thus causing the fins to close, which in turn reduced the flow of air through the radiator and caused the motor to overheat. The driver testified that he found a metal and a rubber washer missing from the radiator mounting at that time.

The driver tied the radiator down, opened the fins with a knife, then drove the truck to New York and back to South Carolina. The truck was returned to Cummins on September 29, 1977. Cummins replaced the radiator at no charge to Hutson and also basically rebuilt the engine at a cost of $3,064.09. The truck was picked up by Hutson on December 3, 1977.

While Cummins had possession of the truck for the latter repairs, it permitted the truck to be parked outside its garage building without antifreeze during a time the temperature reached 22 degrees Fahrenheit. However, no testimony was adduced to show that the water actually froze in the truck's motor or that, even if it froze, damage was done to the motor.

Hutson also testified that during the period Cummins had possession of the truck, it damaged the truck's starter by push-starting it. The truck's starter was operative prior to the time Cummins received it, but required repairs on January 3, 1978.

In February, 1978 Cummins again attempted to repair the oil and water leak problems. Additionally, several other repairmen made repairs to the truck during the period December 27, 1977 to August, 1978 to correct the problems causing the oil and water to mix and leak.

Hutson testified that he continued to have problems with his truck at the time of trial. Hutson and another witness testified that the truck had lost its power. Huston also testified that the loss of power was caused by the oil mixing with the water which resulted from the overheating in California, the freezing of the water in the truck's motor or both.

Of course Cummins introduced testimony that it made no defective repairs to Hutson's truck and the evidence of the cause of the problems Hutson experienced with his truck is in conflict. The weight to be given the testimony and the assessment of the credibility of the witnesses is for the jury. *Hill v. Polar Pantries*, 219 S. C. 263, 64 S. E. (2d) 885 (1951); *Johnson v. Painter*, 307 S. E. (2d) 860 (S. C., 1983).

It is implicit in its verdict that the jury was persuaded by Hutson's evidence. We are not at liberty to reverse the jury's verdict unless the *only* reasonable inferences from the evidence are contrary to the factual findings implicit in the verdict. *Parnell v. Carolina Coca-Cola Bottling Company*, 231 S. C. 426, 98 S. E. (2d) 834 (1957); 5 Am. Jur. (2d) *Appeal and Error* Section 882 (1962).

In determining whether there was sufficient evidence on which the jury could base its verdict, we are mindful that the fact that damages occurred in one of several ways does not defeat a claim if the evidence tends to support the reasonable probability of the theory relied on. In a civil action, proof to a certainty is not required. *Hill v. Polar Pantries, supra.*

Here, in order for Hutson to recover under a breach of implied warranty, he must show that there was a warranty, that the warranty was broken and that his loss

resulted from the breach. 77 C.J.S. *Sales* Sections 364-365 (1952).

It is settled law that where a person holds himself out as specially qualified to perform work of a particular character, there is an implied warranty that the work which he undertakes to do shall be of proper workmanship and reasonably fitted for its intended purpose. *Hill v. Polar Pantries, supra.* Cummins held itself out as being trained in the repair of trucks of the sort here involved and this representation was relied upon by Hutson. Thus, an implied warranty came into being.

We find that the evidence is sufficient to support the jury's conclusion of defectiveness of the reinstallation of the radiator and defective repair of the water pump. There is also some evidence that the truck has not performed properly (as expected) since its engine was rebuilt specifically to correct the oil and water mixture problem. This evidence is sufficient, we think, to sustain liability under the implied warranty given by Cummins to Hutson. *See Simmons v. Ciba-Geigy Corporation,* 279 S. C. 26, 302 S. E. (2d) 17 (1983).

There is also some evidence to show a causal connection between some of the damages claimed by Hutson and the defective repairs done by Cummins. It cannot then be said that there is *no* evidence to support the jury's implicit findings that an implied warranty existed, that the work done by Cummins was defective and that such defective repairs resulted in damages to Hutson.

Having found that the record supports liability on the theory of implied warranty, we need not discuss tort liability. Thus, we affirm on the question of liability. We find, however, that there is *no* evidence to support the amount of damages awarded on either theory of liability.

Our Supreme Court has held that where a vehicle is negligently damaged, the cost to repair it or depreciation in the vehicle's value (cost to repair may constitute a part of the measure of depreciation), together with the value of the loss of use of the vehicle is recoverable against the tortfeasor. *Newman v. Brown,* 228 S. C. 472, 90 S. E. (2d) 649 (1955); *Coleman v. Levkoff,* 128 S. C. 487, 122 S. E. 875 (1924). Loss of profits by the owner may also be recoverable under

proper circumstances. *Charles v. Texas Company*, 199 S. C. 156, 18 S. E. (2d) 719 (1942).

Generally, the measure of damages for breach of a contract resulting from defective repairs to a motor vehicle is the difference between the value of the vehicle in its defective condition and its value in the condition in which it would have been in if the repairs had been properly performed, together with all other losses proximately resulting from the defective repairs. *McDonald v. Patton*, 240 F. (2d) 424 (4th Cir. 1957); 38 Am. Jur. (2d) *Garages and Filling Stations and Parking Stations* Section 80 (1968); *cf. National Tire and Rubber Co. v. Hoover*, 128 S. C. 344. 122 S. E. 858 (1924).

Our Supreme Court has also said that in an implied warranty case, the buyer may recover, in addition to general damages, any special or consequential damages which he may have suffered by reason of the breach of warranty and which are the natural and direct or proximate result of the breach and may reasonably be considered as within the contemplation of the parties at the time the contract was made. *Georgetown Towing Co. v. National Supply Co.*, 204 S. C. 445, 29 S. E. (2d) 765 (1944).

As stated earlier, our task in reviewing a damages award is not to weigh the evidence, but to determine if there is any evidence to support the jury's verdict (here remitted amount). Mere undue liberality on the part of the jury does not warrant the inference that the verdict was the result of caprice, passion or other undue influence. *Nelson v. Charleston & Western Carolina Railway Co.*, 231 S. C. 351, 98 S. E. (2d) 798 (1957). A verdict may be "said to be capricious if it is against the overwhelming weight of the evidence." *Watson v. Paschall*, 100 S. C. 281, 84 S. E. 531, 532 (1915); *Beasley v. Ford Motor Company*, 237 S. C. 506, 117 S. E. (2d) 863 (1963).

This court is mindful that much of the language in the cases relative to excessive damages is based on the rationale that in personal injury cases, damages cannot usually be determined with any degree of certainty. *Haselden v. Atlantic Coast Line Railway Co.*, 214 S. C. 410, 53 S. E. (2d) 60 (1949). However, where as here, the damages are capable of being measured by fixed principles, it is error for the jury or judge to base damages on other standards. *Charles*

*v. Texas Co., supra;* 22 Am. Jur. (2d) *Damages* Section 370 (1965).

The Respondent placed into evidence documentation which, if believed by the jury, could have shown he spent $6,819.73 to repair his truck. Respondent testified that he lost the use of his truck for 117 days. The parties agreed to a rental rate of $80.00 per day. Thus, at such stipulated rental, his loss of use could have equaled $9,360.00.

The only evidence in the record as to depreciation is the testimony of the respondent that the truck had significantly depreciated in value from its 1974 purchase price of $31,000.00 whereas similar vehicles had increased in value. The damages all relate to the truck's engine. There is no evidence that appellant's conduct contributed to the depreciation of other parts of the vehicle. Hutson presented no evidence to show what a new or reconditioned engine would cost, while appellant contended that the vehicle, at worst, needed only a block which could be installed for $2,000.00. We therefore do not believe that the depreciation in this case should exceed the cost to install a rebuilt or new engine. *See Teledyne Industries, Inc. v. Patron Aviation, Inc.,* 161 Ga. App. 596, 288 S. E. (2d) 911 (1982); *Draffin v. Chrysler Motors Corporation,* 252 S. C. 348, 166 S. E. (2d) 305 (1969).

On the issue of recovery for the loss of use of the truck for the two-year period subsequent to August, 1978, the trial judge based his reduced verdict on the fact that respondent testified that he had expenditures for the two-year period 1978-80 similar to those for the one-year period following the initial repairs. To permit respondent to recover for the loss of use of the truck for an extended period of three years would be unreasonable and contrary to his duty to minimize his damages. *Barnett v. Charleston and Western Carolina Railway Co.,* 230 S. C. 525, 96 S. E. (2d) 555 (1957); *Newman v. Brown, supra; Coleman v. Levkoff, supra.* Clearly, after February, 1978, Hutson had no reason to believe that Cummins would remedy the defective repairs and was therefore under a duty to mitigate his damages by having the motor repaired or replaced somewhere else.

Finally, Hutson sought recovery based on loss of profits. There is no evidence that a substitute vehicle could not have been obtained. Thus, loss of profits is not recoverable. 22 Am. Jur. (2d) *Damages* Section 176 (1965).

We therefore find that, as to the trial judge's conclusions that the jury could have found from the evidence that the loss of use exceeded $30,000.00 and depreciation approached $31,000.00, there conclusions are against the overwhelming weight of the evidence, are not supported by any rational view of the evidence, and bear no reasonable relationship to the character and extent of Hutson's damages. We therefore find the verdict to be so grossly excessive that it becomes the duty of this Court to set aside the verdict. *Young v. Warr*, 252 S. C. 179, 165 S. E. (2d) 797 (1969); *King v. Daniel International Corp.*, 278 S. C. 350, 296 S. E. (2d) 335 (1982). We need not find specifically that the jury's verdict was actuated by passion, caprice, prejudice or other undue considerations as urged by respondent. *Beasley v. Ford Motor Company, supra.*

The damages portion of the verdict is set aside and the case remanded for a new trial on the issue of damages only.

Affirmed in part, reversed in part and remanded.

GOOLSBY, J., concurs.

SHAW, J., concurs in part and dissents in part.

SHAW, Judge (concurring in part and dissenting in part):
B. H. Hutson brought suit against Cummins Carolinas, Inc. alleging that repairs made by Cummins on his 1974 Kensworth truck resulted in damage to the truck and loss of wages, profits and time. The suit was brought on the grounds of negligence and breach of implied warranty of repair. Cummins is appealing a jury verdict of $65,000 in favor of Hutson which was remitted by the trial judge to $47,500. I would affirm.

On appeal, Cummins claims that Hutson failed to prove that any damages he suffered were proximately caused by a specific defective repair made by Cummins. The evidence shows that several repairs were made on the Kensworth over a one year period. Cummins made the major repairs over this period but not the majority of them. At the end of all the testimony, Cummins' motion for a directed verdict on the grounds that Hutson failed to sustain his burden of proof as to proximate cause was denied and the case was allowed to go to the jury.

*In Townes Associates v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976), our Supreme Court held:

> In an action at law, on appeal of a case tried by a jury, the jurisdiction of [appellate courts] extends merely to the correction of errors of law and a factual finding of the jury will not be disturbed unless a review of the record discloses that there is no evidence which reasonably supports the jury's findings. *Townes,* 221 S. E. (2d) at 775.

This court has no power to review matters of fact in an action at law, except to determine if a verdict is wholly unsupported by evidence. *Worrell v. S. C. Power,* 186 S. C. 306, 195 S. E. 638, 641. On review of the record, it appears that the evidence presented reasonably supports the factual findings of the jury. We are not at liberty to retry this case.

Cummins also claims that the contributory negligence of an employee of Hutson's was a substantial factor in causing the damage complained of. Ordinarily, contributory negligence is an issue for the jury, *Young v. Parker,* 224 S. C. 35, 77 S. E. (2d) 288 (1953), and rarely becomes a question of law for the court. *Mock v. Atlantic Coast Line,* 227 S. C. 245, 87 S. E. (2d) 830 (1955). The jury heard testimony that the employee's actions in the situation he was confronted with were proper. In light of that testimony and the jury's verdict, we cannot say as a matter of law that the employee was contributorily negligent.

The jury returned a verdict of $65,000 in favor of Hutson. Hutson was given the option of accepting a new trial *nisi* or a remittitur of the verdict to $47,500 and took the remittitur. Hutson had introduced evidence of damages totalling $65,000. The $65,000 included amounts for renting another truck and for lost profits. Based on this evidence, the trial judge could find the damages awarded to be unduly liberal. Remittitur of the verdict was proper when Hutson was given the choice of a new trial *nisi. Nelson v. Charleston & W. C. Ry. Co.,* 231 S. C. 351, 98 S. E. (2d) 798 (1957).

The Supreme Court accords great respect to the jury and trial judge to determine the amount of a verdict. "We have said repeatedly that we have little, if anything, to do with the amounts of verdicts. The proper amounts to be rendered, as actual or punitive damages, are left, under our law, almost entirely to the trial jury and the trial judge." *Charles v. Texas*

*Co.,* 199 S. C. 156, 18 S. E. (2d) 719, 729 (1942), quoting from *Weeks v. Carolina Power and Light Co.,* 156 S. C. 158, 153 S. E. 119, 124 (1930). The Supreme Court cannot reduce a verdict and will only strike down a verdict *in toto* in those rare cases where the amount is so shockingly excessive as to indicate it was the result of passion, partiality, prejudice or corruption. *Aaron v. Hampton Motors, Inc.,* 240 S. C. 26, 124 S. E. (2d) 585 (1962); *Lucht v. Youngblood,* 266 S. C. 127, 221 S. E. (2d) 854 (1976).

Where the amount of the verdict is such as to indicate mere undue liberality on the part of the jury, the Supreme Court has no jurisdiction to correct it; rather, that power rests with the trial judge alone who may set it aside or reduce it by granting a new trial *nisi. Reid v. Swindler,* 249 S. C. 483, 154 S. E. (2d) 910 (1967). The trial judge acted properly.

Accordingly, I would

Affirm.