487 S.E.2d 596

**Jim Curtis GOODING, Respondent,**

v.

**ST. FRANCIS XAVIER HOSPITAL and Judith Hood, M.D., Petitioners.**

No. 24629.

Supreme Court of South Carolina.

Heard June 4, 1996.

Decided June 2, 1997.

Rehearing Denied July 10, 1997.

Charles E. Carpenter, Jr., of Richardson, Plowden, Grier & Howser, P.A., Columbia; Elliott T. Halio, of Halio & Halio, P.A., and M. Dawes Cooke, Jr., of Barnwell, Whaley, Patterson & Helms, Charleston, for petitioners.

James H. Moss and H. Fred Kuhn, Jr., of Moss & Kuhn, P.A., Beaufort, for respondent.

BURNETT, Justice:

We granted certiorari to review the Court of Appeals' decision in *Gooding v. St. Francis Xavier Hospital,* 317 S.C.

320, 454 S.E.2d 328 (Ct.App.1995). We affirm in part and reverse in part.

## FACTS

Respondent (Gooding) brought this medical malpractice action against petitioners (Hospital and Dr. Hood) alleging Dr. Hood, an anesthesiologist, chipped his two front teeth while intubating[1] him for surgery. At trial, Gooding moved to qualify Ralph Sorensen, Jr., an emergency medical technician (EMT) and paramedic, as an expert in intubation. Hospital and Dr. Hood objected to qualifying Sorensen as an expert in intubation because Sorensen was not an anesthesiologist.

Outside the presence of the jury, Sorensen testified he was a certified paramedic and EMT, had intubated over one hundred patients, and instructs and tests physicians on intubation and extubation procedures. In explaining the proper procedure for intubating a patient, he testified the greatest risk during intubation is the fracturing of the front two teeth.

The trial judge ruled Sorensen was not qualified to testify as an expert witness. The trial judge specified:

... the necessary requirement for expert testimony, and particularly in malpractice cases, is of such a nature that the witness must have special expertise by way of training to compare with that of the physician who is defending the charges. In this case, even though the witness is somewhat trained in the mechanics of this medical assistance, he is not a medical doctor; he does not have the medical expertise required to testify under the circumstances of this case.

Gooding then proffered Sorensen's substantive testimony by introducing a videotape of Sorensen demonstrating, on a mannequin, the proper performance of intubation. During this videotape, Sorensen stated that medical personnel performing intubation sometimes use the teeth as a fulcrum because 1) they are not strong enough to lift the patient's tongue and epiglottis to expose the trachea, 2) they have an improper technique, 3) the patient's head is at a bad angle, or 4) the

---

1. During intubation, an endotracheal tube is placed into the patient's trachea to assure a clear airway and prevent the aspiration of foreign material into the lungs. *Dorland's Illustrated Medical Dictionary* (25th ed.1974).

instrument used for intubation is not inserted far enough into the patient's mouth for leverage. Sorensen did not testify that Dr. Hood used Gooding's teeth as a fulcrum. The jury returned a verdict for Hospital and Dr. Hood.

The Court of Appeals held the trial judge should have qualified Sorensen as an expert witness in intubation. Additionally, the Court of Appeals held that Sorensen's testimony was necessary for Gooding to establish that Dr. Hood deviated from the standard of care. Specifically, the Court of Appeals found that Sorensen's videotape demonstrating intubation procedures presented circumstantial evidence of how and when Gooding's teeth were chipped.

## ISSUES

I. Did the Court of Appeals err by concluding the trial judge should have qualified Sorensen as an expert witness in the area of intubation?

II. Did the Court of Appeals err by concluding Sorensen's testimony presented evidence of Dr. Hood's deviation from the standard of care?

## DISCUSSION

### I.

Hospital and Dr. Hood argue that the Court of Appeals erred by concluding that Sorensen was qualified to testify as an expert witness because he was not familiar with the standard of care of anesthesiologists. We disagree.

The qualification of an expert witness and the admissibility of the expert's testimony are matters within the trial court's discretion. *McGee v. Bruce Hospital System*, 321 S.C. 340, 468 S.E.2d 633 (1996); *Creed v. City of Columbia*, 310 S.C. 342, 426 S.E.2d 785 (1993). An abuse of discretion occurs when there is an error of law or a factual conclusion which is without evidentiary support. *Lee v. Suess*, 318 S.C. 283, 457 S.E.2d 344 (1995).

To be competent to testify as an expert, "a witness must have acquired by reason of study or experience or both such knowledge and skill in a profession or science that he is

better qualified than the jury to form an opinion on the particular subject of his testimony." *O'Tuel v. Villani,* 318 S.C. 24, 28, 455 S.E.2d 698, 701 (Ct.App.1995). A medical practitioner's experience teaching and interacting with persons in the applicable specialty are sufficient to support his qualification as an expert. Qualification depends on the particular witness' reference to the subject. *Lee v. Suess, supra.*

"[A]n expert is not limited to any class of persons acting professionally." *Botehlo v. Bycura,* 282 S.C. 578, 586, 320 S.E.2d 59, 64 (Ct.App.1984); *see also, McGee v. Bruce Hospital System, supra* (although the physician was not a surgeon, he could testify as an expert on the standard of care in the placement of a catheter by a surgeon); *Howle v. PYA Monarch, Inc.,* 288 S.C. 586, 344 S.E.2d 157 (Ct.App.1986)(a psychologist was qualified as an expert witness to testify as to diagnosis, prognosis, and causation of mental and emotional disturbance in a personal injury action); *Daniels v. Bernard,* 270 S.C. 51, 240 S.E.2d 518 (1978)(in a personal injury action, a chiropractor was competent to testify as a medical expert to the extent of his knowledge and experience); *Sandford v. Howard,* 161 Ga.App. 495, 288 S.E.2d 739 (1982)(an orthopaedist was competent to testify against a podiatrist where the orthopaedic and podiatric methods of treatment were the same and the witness had knowledge of the procedure used by the podiatrist); *Avret v. McCormick,* 246 Ga. 401, 271 S.E.2d 832 (1980)(a nurse was competent to testify in a medical malpractice action against a physician as to the standard of care in keeping sterile a needle used to draw blood). Defects in an expert witness' education and experience go to the weight, rather than the admissibility, of the expert's testimony. *Lee v. Suess, supra.*

Gooding only sought to have Sorensen qualified as an expert witness in intubation, not as an expert in the field of anesthesiology. Sorensen's training and experience qualified him to testify as an expert in the limited area of intubation. There was no requirement that Gooding's expert witness be an anesthesiologist in order to testify about intubation procedures. *McGee v. Bruce Hospital System, supra; Botehlo v. Bycura, supra.* The fact that Sorensen may have had less medical training and education than Dr. Hood is relevant to

his credibility as a witness and affects the weight, not the admissibility of his testimony. *Lee v. Suess, supra.* The Court of Appeals correctly determined that Sorensen should have been permitted to testify as an expert witness.

## II.

Dr. Hood and Hospital further argue the Court of Appeals erred by concluding that Sorensen's testimony was necessary and relevant to establish that Dr. Hood used Gooding's teeth as a fulcrum, thereby deviating from the standard of care. We agree.

In a medical malpractice action, the plaintiff must present (1) evidence of the generally recognized practice and procedures that would be exercised by competent practitioners in a defendant doctor's field of medicine under the same or similar circumstances and (2) evidence that the defendant doctor departed from the recognized and generally accepted standards, practices, and procedures in the manner alleged by the plaintiff. Further, unless the subject is a matter of common knowledge, the plaintiff must use expert testimony to establish both the standard of care and the defendant's failure to conform to that standard. *Pederson v. Gould,* 288 S.C. 141, 341 S.E.2d 633 (1986). A medical malpractice plaintiff who relies solely on expert testimony must introduce evidence that the defendant's negligence most probably resulted in the injuries alleged. *Green v. Lilliewood,* 272 S.C. 186, 249 S.E.2d 910 (1978).

The parties agree on the standard of care for intubation. Dr. Hood testified it would be a deviation from the standard of care for an anesthesiologist to use a patient's teeth as a fulcrum during intubation. Dr. Hood denied, however, using Gooding's teeth as a fulcrum. Dr. Hood testified that when she left Gooding in the recovery room after surgery his teeth were intact and that she learned Gooding's teeth had been chipped approximately two hours later when he had been returned to his hospital room. Dr. Hood agreed there is a high incidence of broken teeth during intubation. There were no witnesses who testified they saw Dr. Hood use Gooding's teeth as a fulcrum during intubation.

Sorensen's proffered testimony does not establish that Dr. Hood deviated from the standard of care. Although he stated there is a risk of fracturing the two front teeth during intubation, Sorensen never testified that Dr. Hood used Gooding's teeth as a fulcrum during intubation. Because Gooding presented no evidence that Dr. Hood did not conform to the accepted standard of care, he failed to establish that Dr. Hood was negligent. Therefore, even if Sorensen had been permitted to testify as an expert witness, Gooding would still have failed to establish that Dr. Hood's conduct did not conform with the standard of care for intubation. *Pederson, supra; Green, supra.* Accordingly, we reverse the Court of Appeals' decision remanding this case for a new trial and order the verdict of the jury reinstated.

**AFFIRMED IN PART, REVERSED IN PART.**

FINNEY, C.J., and TOAL, MOORE and WALLER, JJ., concur.